Argued March 18, affirmed as modified May 3, reconsideration denied
June 9, petition for review denied June 22, 1976

In the Matter of the Dissolution of the Marriage of
BARRONG, *Appellant,*
*and*
BARRONG, *Respondent.*
(No. 40993, CA 5315)
549 P2d 530

*Paul D. Clayton,* Eugene, argued the cause for appellant. With him on the brief were Luvaas, Cobb, Richards & Fraser, Eugene.

[ 347 ]

*Donald P. Reiling,* Albany, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

**LANGTRY, J.**

Husband appeals from a trial court order made after hearing, responsive to separate motions by husband and wife seeking modification of a dissolution decree which was entered in 1972.[1] He challenges (1) an award to wife of $450 in attorney fees, (2) a determination that on August 21, 1975 husband was delinquent $1,118.38 in child support previously ordered, and (3) a determination that he be required to pay $190 per month "spousal support."

Both parties were 42 years of age at the time of dissolution in 1972; they had been married for 21 years, and had three minor children.

There was ample evidence of change of circumstances. Wife's health was precarious; husband's take-home pay increased from around $500 to $900 per month; wife was educated and worked as a tax accountant, but her income was spotty, much lower than husband's, and her financial situation was dismal. Husband had no other obligations except for $15,000 he testified he had borrowed from his new wife to buy a mobile home in which he and she live.

Two sons have become emancipated or of majority age. The delinquency sum settled upon by the trial court was made up largely of unpaid support payments of $65 per month originally ordered for each of these two sons. The dispute with reference thereto was as to both what had been paid, and when the boys had become self-supporting. It was undisputed that at the time of the hearing they were emancipated, also that the third child was still dependent, and that $125 instead of $65 per month was needed (and was ordered) from husband for his support.

Preceding dissolution the parties had entered into

---

[1] A part of wife's motion sounded in contempt against husband for alleged failure to pay support previously ordered. The trial court announced it was not considering this issue; hence, we ignore it in this appeal.

an agreement which was made a part of the decree in which compliance therewith had been ordered.

■ (1) The award of attorney fees was made without any evidence concerning the reasonableness thereof, or a stipulation that the court could set such fee without evidence. Wife's counsel contends that inasmuch as the wife's motion sounded in contempt for failure to pay child support (no contempt was even considered by the trial court, *see* note 1), which circumstance was what had forced her into court, or in the alternative inasmuch as ORS 107.135(3) provides that "the court may assess" a reasonable fee, nothing else is necessary. Neither argument meets the often-expressed need for evidence of reasonableness or a stipulation that the court may set the fee without evidence. *Fery and Fery,* 20 Or App 581, 585-86, 532 P2d 1131 (1975). The fee award must be deleted from the order.

■ (2) With reference to the trial court's finding of the delinquency judgment, in its letter opinion the court explained the finding:
"* * * * *

"Exhibit 3 is a package of checks totaling $624.00. However, these pre-date the decree except one check for $125.00. He did pay $175.00 to the Lake Creek Mennonite School for Robin's tuition. The $300 he paid her from his life insurance should be a credit. The other items were apparently volunteered without expectation of credit.

"The court finds that the present unpaid balance is $1,718.38, less the sum of $600.00. The court also finds that the amounts earned by Rex from August 1972 to September 1973, and by Kim from August 1972 through May 1974 were not such as to relieve the father of his duty to support."

This determination is in accordance with the evidence and is just. We adopt it.

(3) The agreement, inter alia, provided that the

wife should have the parties' residential property in Harrisburg and:

"* * * There is presently an unpaid balance due on the mortgage of the dwelling at 985 Azalea Street, Harrisburg, Oregon and the husband agrees to make said payments on this dwelling and in addition thereto to make all utility payments as they become due and before they become delinquent. The wife will notify the husband on a monthly basis of the total amount of utilities from the previous month * * *."

Evidence was that the mortgage on this property had 23 or 24 years to run at about the time of the dissolution. However, because of financial reverses and complications wife disposed of the house in 1973 with a net return to her of $199, and commenced renting residences for herself and children. Concerning who paid her rent and utilities thereafter she testified:

"Q [By wife's counsel:] Now, under the terms of the property settlement agreement in this case, did Mr. Barrong make the utilities payment and the the house mortgage payments on the Azalea Street property?

"A Yes. Until—

"Q Until the time it was sold?

"A Yes.

"Q What happened after it was sold?

"A There was some—I suppose, this disagreement between us as to what he should and shouldn't pay according to the agreement for the most part. He did pay the rent, I paid some and he paid some. I usually paid the difference and when I moved I would pay whatever had to be paid, but he would make the monthly payments. I think also he paid most of the utility payment and phone payment. I sometimes would pay the difference between certain figures because I felt like he wasn't really obligated to pay certain portions and I would pay the difference and then he did pay the rent usually.

"Q All right.

"A But, he quit making the utility payments and phone payments sometime back."

Husband contends that under the agreement his payments on the mortgage and for utilities were intended

only for so long as wife continued to live at the Azalea Street residence. But he conceded that he did pay rent for her succeeding residences from "September '73 to February '74." "I suppose I felt a sense of taking care of my children." Against this background of facts, from which it may be inferred that both parties really did view the provisions of the agreement as being in the nature of "spousal support" at least while the children remained with her, the trial court in its opinion said:

> "The original agreement of the parties provided that the husband pay the house payment, and the utilities on the Azalea Street property. Spousal support was not mentioned, but quite obviously the parties contemplated that she would thus have a house provided for herself and children. Under the holding in *Garnett v. Garnett*, 526 P2d 549, the court has jurisdiction to modify such a provision if it deems the provision to be in the nature of support rather than a division of property. This it does.

> "The house payment of $127.80 included the mortgage, interest, and insurance, and the utilities averaged from $50 to $70 according to the testimony.

> "Had the wife not done so, she would have received the equivalent of $177.80 to $197.80 per month for more than 22 years, plus the full value of the house at the end of that time. However, she sold it September 10, 1973, even though she received only $199.93.

> "The husband contends that this ended his obligation to her. The court finds this to be illogical, and that he should pay her $190.00 per month in lieu of the former provision, which sum the court finds reasonable for him to pay her for her support."

Counsel have argued at length about whether the disputed provision of the agreement is to be construed as in the nature of support under the Oregon Supreme Court's decision in *Garnett v. Garnett,* 270 Or 102, 526 P2d 549 (1974). As did the trial judge, we hold it is, and we agree with the amount of support set, namely $190. However, we also hold that this should not run indefinitely. *See Kitson and Kitson,* 17 Or App 648, 656, 523 P2d 575, Sup Ct *review denied* (1974); *Jacob-*

*son and Jacobson,* 13 Or App 152, 155, n 2, 509 P2d 450 (1973).

We modify the order by setting a termination date on the support payments for wife at age 62, or remarriage. The attorney fee allowed is deleted from the order.

Affirmed as modified. Costs to respondent.